UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MOHAMED FATHY SAID,

    Plaintiff,

v.                                       Case No. 8:21-cv-1073-WFJ-CPT

AISHA AHMED H O AL ADHAB, QATAR
EMBASSY IN WASHINGTON D.C. USA,
QATAR MINISTRY OF INTERIOR, QATAR
MINISTRY OF ADMINISTRATIVE
DEVELOPMENT, LABOR, QATAR MINISTRY
OF FOREIGN AFFAIRS, QATAR MINITRY OF
JUSTICE, and QATAR MINISTRY OF
COMMERCE AND INDUSTRY,

    Defendants.

_____/


**O R D E R**

    Before the Court is pro se Plaintiff Mohamed Fathy Said's *Note to the [C]ourt for [U]pdate[d] [I]nformation*, which the Court construes as a motion to supplement the record and to seek certain forms of relief. (Doc. 115). For the reasons discussed below, Mr. Said's motion is denied.

I.

    The background of this case is set forth in prior Orders of the Court (Docs. 28, 36, 40, 44, 53, 88) but bears repeating here, at least in part. Mr. Said initiated this suit

in May 2021 (Doc. 1) and filed an amended complaint shortly thereafter asserting various claims against Defendants Aisha Ahmed H O Al Adhab (a Qatari resident); the Qatar Embassy in Washington, D.C.; the Qatar Ministry of Interior; the Qatar Ministry of Administrative Development, Labor; the Qatar Ministry of Foreign Affairs; the Qatar Ministry of Justice; the United States Department of State; and the United States Department of Justice (Doc. 11).   Roughly seven months later, in January 2022, Mr. Said submitted a motion requesting that the clerk dispatch his amended complaint and other documents to the Defendants so that he could effectuate service of process on them.   (Doc. 39).   Due to a number of deficiencies with his motion, however, and due to the complexities involved in serving foreign entities, the Court denied the motion without prejudice (Doc. 53) and appointed pro bono counsel to represent Mr. Said for the limited purpose of assisting him in addressing the matter of service (Doc. 52).

With the help of his lawyers, Mr. Said subsequently filed a renewed motion asking that the Court direct the clerk to dispatch his notice of suit, summonses, and amended complaint in English and Arabic, with a return receipt requested, to the Defendant Qatari entities under the Foreign Sovereign Immunity Act (FSIA).   *See* (Doc. 81); *see also* 28 U.S.C. § 1608.  Mr. Said also asked in his motion that the Court instruct the clerk to mail these same documents to the individual Defendant, Aisha Ahmed H O Al Adhab, pursuant to Federal Rule of Civil Procedure 4.   *See* (Doc. 81); *see also* Fed. R. Civ. P. 4.

In September 2022, while Mr. Said was pursuing the matter of service, both the State Department and the Justice Department moved to dismiss his allegations against them on the grounds that they were immune from suit, that Mr. Said's amended complaint did not adhere to the basic pleading requirements set forth in the Federal Rules of Civil Procedure in any event, and that his amended complaint failed to state a cognizable claim for relief as well. (Doc. 60). The Court subsequently entered an Order granting the government's motion to the extent it dismissed Mr. Said's amended complaint without prejudice. *See* (Docs. 88, 91). As part of the same Order, the Court also denied Mr. Said's request for dispatch as moot and allowed him thirty days to file a second amended complaint. (Doc. 91). The Court additionally relieved Mr. Said's attorneys of any further responsibility in the action, provided that "they instruct[ed] Mr. Said on how to serve both the domestic and international Defendants should he [elect] to file another amended complaint." *Id.*[1]

In April 2023, Mr. Said filed a second amended complaint in which he named the same Defendants with the exception of the State Department and the Justice Department, and added a new defendant, the Qatar Ministry of Commerce and Industry. (Doc. 94). That same month, Mr. Said moved the clerk to dispatch his notice of suit, summons, and his newly revised complaint to all the Defendants, including the Qatar Ministry of Commerce and Industry (Doc. 97), and for the Court

---

[1] According to documents Mr. Said filed on the public docket afterwards, it appears his counsel complied with the Court's directive and, as relevant here, advised him that he must effectuate service of any later amended complaint. (Doc. 96).

to award him a default judgment against the Defendants as well (Doc. 99).  The Court denied Mr. Said's motion to dispatch without prejudice because it seemed to lack certain necessary attachments (Doc. 106), and separately denied Mr. Said's motion for a default judgment because he did not lay the proper foundation for such relief (Doc. 101).  The Court also denied as deficient a subsequent motion by Mr. Said for a clerk's default.  (Docs. 103, 107).

A few days later, Mr. Said filed another motion for a clerk's default, along with an assortment of other motions (Docs. 108–110, 112), all of which were denied by the Court in an Order entered in July 2024 (Doc. 113).  Of significance here, the Court deemed Mr. Said's motion for a clerk's default to be fatally flawed because he did not show that he had successfully effectuated service of his second amended complaint on the Defendant Qatari entities under the FSIA or on the Defendant Qatari resident under Rule 4.  *Id.*  To cure these deficiencies, the Court instructed Mr. Said to properly effectuate service of his second amended complaint on all the Defendants by September 6, 2024.  *Id.*

The instant motion followed.  (Doc. 115).  While difficult to decipher, Mr. Said appears to maintain in his motion that his second amended complaint was properly served on each of the Defendants by his former counsel and that he has since endeavored to secure proof of that service, seemingly without success.  *Id.*  To buttress this assertion, Mr. Said attaches to his motion various emails he exchanged with the Office of International Judicial Assistance (OIJA) in July 2024, which seemingly identify the address of an office within the State Department that might be able to

4

provide him with an update "on execution of [his] request for service through diplomatic channels." *Id*. at 9–13. Mr. Said also appends to his motion an undated letter he purportedly sent to the State Department at the address supplied by OIJA, in which he appears to claim that "the complaint" and other "official documents" concerning his case, including a "certified receipt and a copy of the summons," were transmitted to the State Department in July 2022, and that "a certificate from the attorney who assisted with the [s]ervice [of p]rocess" was published with the court. *Id*. at 8. Mr. Said further states in his undated letter that he would like the State Department to forward "copies of '[p]roof of [s]ervice' or any other official documents that may have been issued or documented on file" to the "Middle District Court in Tampa, Florida." *Id*.

In addition to the emails involving OIJA and the undated letter to the State Department, Mr. Said affixes to his motion, *inter alia*, two FedEx labels, one from him to the State Department in August 2024, and the other from the State Department to him on the same date, as well as a FedEx confirmation that a package was delivered later in August 2024. *Id*. at 14–16. While Mr. Said does not specify the contents of the Fed Ex package(s), the Court assumes for purposes of this Order that the package(s) included the undated State Department letter he authored.

Finally, separate and apart from the above items, Mr. Said requests in his motion that the Court (1) "expedite the US [D]epartment of [J]ustice in responding to this case;" (2) subpoena one of his "pro bono lawyer[s] to ask h[er] about any

document she's been reserved [sic] since she's removed by court order," and (3) "appoint[ ] another lawyer . . . from [his] own expenses." *Id.* at 5–6.

## II.

### A.

As it did in its July 2024 Order, the Court begins its analysis with a discussion of the parameters governing service of process on foreign entities. *See* (Doc. 113 at 6–8). For purposes of this discussion, the Court assumes without deciding—as it did in its July 2024 Order as well—that all of the Defendant Qatari entities are political subdivisions under the FSIA. *See id.* at 6; 28 U.S.C. § 1608(a).

To ensure foreign states or political subdivisions are correctly served, the FSIA sets out four methods of service that must be strictly followed "in descending order of preference." *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008); *see also* 28 U.S.C. § 1608(a); *Republic of Sudan v. Harrison*, 587 U.S. 1, 4–5 (2019); *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015); *L.S. Energia Inc. v. Corporacion Electrica Nacional S.A.*, 2023 WL 122196, at *1 (S.D. Fla. Jan. 6, 2023). This means that a plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Ben-Rafael*, 540 F. Supp. 2d at 52 (citing 28 U.S.C. § 1608(a)).

The first method of service—referenced in 28 U.S.C. § 1608(a)(1)—is made by delivering "a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." 28 U.S.C. § 1608(a)(1). If no such special arrangement exists, the

second method of service—prescribed in section 1608(a)(2)—requires that delivery be made "in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(a)(2). And if there is no applicable international convention, the third method of service—set forth in section 1608(a)(3)—necessitates that "a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, . . . be addressed and dispatched by the clerk . . . to the head of the ministry of foreign affairs of the foreign state concerned." *Id.* § 1608(a)(3). The third method of service further demands that the notice of suit include a copy of the FSIA, *see* 22 C.F.R. § 93.2; *Fly Brazil Grp., Inc. v. Gov't of Gabon, Africa*, 709 F. Supp. 2d 1274, 1280 (S.D. Fla. 2010), and that such service be accomplished within thirty days of being mailed, *see Ben-Rafael*, 540 F. Supp. 2d at 52; *see also Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 83 (D.D.C. 2006).

A plaintiff may utilize the fourth and final method of service—described in 28 U.S.C. § 1608(a)(4)—only "if none of the first three methods work[ ]." *Barot*, 785 F. 3d at 27. When the fourth method of service is permitted, a plaintiff may ask that the clerk dispatch two copies of the summons, complaint, and a notice of suit, together with a translation of each in the foreign state's official language, to the Secretary of State, who must then "transmit one copy of the papers through diplomatic channels to the foreign state and [must also] send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." 28 U.S.C. § 1608(a)(4).

B.

With this background in mind, the Court now turns to Mr. Said's motion, commencing with his claim that his second amended complaint was properly served on all the Defendants by his prior attorneys. (Doc. 115). Although not entirely clear, it appears Mr. Said asserts in this regard that such service was perfected using FSIA's fourth method. *Id*. at 5. To bolster this claim, Mr. Said seemingly relies on his communications with the State Department and the OIJA that are included with his motion. *Id.* at 5–16. This claim is unsupported.

As an initial matter, according to Mr. Said's own materials, it appears that the only time any "official documents" relating to this case were purportedly sent to the State Department by his former counsel was in July 2022, which is before his second amended complaint was filed. *See id.* at 5, 8; *see also* (Doc. 94). These "official documents" therefore could not have included his second amended complaint and thus are seemingly of no help to him here.[2]

In addition, as alluded to above, it appears from the correspondence appended to one of Mr. Said's earlier filings that his pro bono lawyers—as the Court directed them to do in its previous dismissal Order (Doc. 91)—specifically advised Mr. Said that it was *his* responsibility to perfect service of his second amended complaint on the Defendants. *See* (Doc. 96) (documenting the instruction by Mr. Said's counsel that if

---

[2] As with his prior motions, *see, e.g.*, (Doc. 108), Mr. Said does not address, and the Court therefore does not decide, whether the law mandates that he must again exhaust the FSIA's first, second, and third methods of service now that he has filed a second amended complaint. *See* (Doc. 113 at 8 n.5).

Mr. Said "cho[se] to amend [his] complaint in response to the Court's [O]rder of dismissal, [Mr. Said would] need to serve the foreign defendants on [his] own."). There is no evidence in the record that Mr. Said ever accomplished this task.

Moreover, even if the second amended complaint and attendant items somehow made their way to the Defendants, Mr. Said does not show that this was done in accordance with the FSIA's requirements. By way of example, although—as referenced above—Mr. Said suggests in his motion that service of his second amended complaint was effectuated on the Defendant Qatari entities via the FSIA's fourth method (Doc. 115 at 5, 8), this method mandates that the clerk dispatch the necessary materials to the Secretary of State, 28 U.S.C. § 1608(a)(4). Yet there is no indication on the docket that the clerk ever did so.

Mr. Said's requests for relief likewise fail. His first request, as described earlier, is that the Court "expedite the US [D]epartment of [J]ustice in responding to this case." (Doc. 115 at 5). Mr. Said's second amended complaint, however, does not name the Justice Department as a defendant, *see* (Doc. 94), and Mr. Said does not provide an adequate justification for the Court issuing such a directive to this federal agency, especially since it is no longer part of this action.

Mr. Said's second request that the Court subpoena one of his "pro bono lawyer[s] to ask h[er] about any document she's been reserved [sic] since she's removed by court order" is similarly unavailing. (Doc. 115 at 5). As discussed previously, Mr. Said's former counsel were relieved of any responsibility in this case prior to the filing of his second amended complaint, and Mr. Said fails to identify any reason to believe

these attorneys would now possess any documentation relevant to the service of that pleading.

As for Mr. Said's third request that the Court "appoint[ ] another lawyer . . . from [his] own expenses," Mr. Said offers only that "no lawyer want[s] to deal with [him]," which is "not fair," and that he has "the right to have a lawyer." *Id.* at 6. This request is also infirm.

To start, requests for the appointment of counsel in civil matters are governed by 28 U.S.C. § 1915, which provides that a court may ask "an attorney to represent any person *unable to afford* counsel." 28 U.S.C. § 1915(e)(1) (emphasis added). Mr. Said's statement that new counsel should be appointed "from his own expenses" indicates that he is not indigent and that he can afford to hire a lawyer on his own. *See Diaconu v. Def. Logistics*, 2008 WL 2456493, at *1 (E.D. Pa. June 16, 2008) (citing 28 U.S.C. § 1915(e)(1) and finding that the "court cannot appoint counsel for [the] plaintiff unless she makes a showing that she is unable to afford counsel"). The fact that Mr. Said is apparently a difficult client is something he needs to remedy, not the Court.

Furthermore, even if Mr. Said is indigent, it is well settled that a civil litigant does not have a constitutional right to counsel, *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999), and that the litigant must demonstrate there are exceptional circumstances warranting the appointment of a lawyer in his case, *DeJesus v. Lewis*, 14 F.4th 1182, 1204 (11th Cir. 2021); *Rager v. Augustine*, 760 F. App'x 947, 949 (11th Cir. 2019) (per

curiam) (citing *Smith v. Fla. Dep't. of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013)).[3]  Mr. Said does not make such a showing here.  As explained above, the Court elected to appoint two pro bono attorneys to represent Mr. Said for the limited purpose of helping him address the matter of service.  (Doc. 52).  As also noted above, the record indicates that these lawyers did so in connection with Mr. Said's first amended complaint.  The proverbial ball is now in Mr. Said's court to implement the advice he received from prior counsel relative to his second amended complaint.  This ruling, however, does not prohibit Mr. Said from retaining an attorney on his own accord given his apparent financial wherewithal to do so.

## III.

Based upon the foregoing, it is hereby ORDERED:

1.    Mr. Said's *Note to the [C]ourt for [U]pdate[d] [I]nformation* (Doc. 115) is denied.

2.    **No later than February 14, 2025**, Mr. Said shall properly effectuate service of his *second amended complaint* on all Defendants.  Mr. Said is cautioned that a failure to abide by this directive may result in the dismissal of his case.  *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (stating that federal courts lack jurisdiction when a defendant has not been properly served); *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) (same); *see also Julien v. Williams*, 2010 WL 5174535, at *4 (M.D. Fla. Dec. 15, 2010) (ordering that a failure to serve a foreign

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

defendant would result in a dismissal of the case without prejudice); *Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to United Nations*, 2005 WL 1621342, at *5 (S.D.N.Y. July 12, 2005) (dismissing a complaint without prejudice for insufficient service under the FSIA because "the FSIA requires strict compliance" and because a dismissal under such circumstances "saves the [c]ourt and the [p]laintiff time[,] . . . aids in trying cases on their merits[, and is] . . . in the interests of justice").

3.      As before, Mr. Said is encouraged to seek legal assistance and to consult the resources that are available to pro se litigants in addressing the matter of service and in requesting relief from the Court.  Mr. Said may obtain advice, for example, through the "Legal Information Program," in which the Tampa Bay Chapter of the Federal Bar Association offers unrepresented federal court litigants the opportunity to solicit and obtain free, limited guidance from lawyers regarding the procedures governing federal cases.  Mr. Said may also review the materials the Middle District of Florida makes available to pro se litigants, which includes a "Guide For Proceeding Without a Lawyer."  The Court's website additionally contains helpful links to the Federal Rules of Civil Procedure, as well as to various forms for federal court litigants to use.

SO ORDERED in Tampa, Florida, this 10th day of January 2025.


HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Pro se Plaintiff